**In the Matter of S.B.C.**

No. 12–88–00305–CV.

Court of Appeals of Texas,
Tyler.

Jan. 31, 1991.

Rehearing Overruled April 4, 1991.

Tab Beall, Tyler, for appellant.

Michael Sandlin, Tyler, for appellee.

RAMEY, Chief Justice.

The appellant S.B.C.[1] appeals from an adjudication and disposition of a juvenile court action alleging delinquent conduct, i.e., aggravated sexual assault. Pursuant to TEX.FAM.CODE ANN. § 54.04 (Vernon Supp.1991),[2] the jury assessed disposition at thirty (30) years. We affirm.

■ Appellant's first point of error alleges that the State's original petition was fundamentally defective because it failed to comply with the requisites of an indictment as set forth in TEX.CODE CRIM.PROC.ANN. art. 21.02 (Vernon 1989). This action is in juvenile court; therefore, it is the Texas Family Code which is controlling, not the Texas Code of Criminal Procedure.[3] *Rob-*

---

1. Pursuant to TEX.FAM.CODE ANN. § 56.01(j) (Vernon 1986), the juvenile shall be identified only by his initials.

2. Unless there has been a substantive change in the language used, all citations in this opinion shall be to the most recently published source in effect.

3. We note, however, that except when in conflict with a provision of the Texas Family Code, the Texas Rules of Civil Procedure govern the

*inson v. State,* 707 S.W.2d 47, 48–49 (Tex. Cr.App.1986); *In the Matter of T.R.S. v. State,* 663 S.W.2d 920, 921 (Tex.App.—Fort Worth 1984, no writ). A review of the petition filed by the State shows that it is in full compliance with TEX.FAM.CODE ANN. § 53.04 (Vernon 1986). The petition was styled "IN THE MATTER OF [S.B.C.]"; it was submitted on information and belief of the State; it identified by name, age and residence address the juvenile made subject of the petition; it stated the time, place, and manner of the acts alleged to have been committed and the penal law alleged to have been violated by the conduct of the juvenile; it identified the juvenile's parents by name and residence address. The petition is also in compliance with TEX.FAM. CODE ANN., § 53.045 (Vernon Supp.1991), in that it specifically identified the alleged delinquent conduct as being in violation of TEX.PENAL CODE ANN. § 22.021 (Vernon 1989) (Aggravated Sexual Assault). Appellant's first point of error is overruled.

■ In his second point of error, appellant contends that the State's determinate sentencing statutes [4] under which he was adjudicated violated his federal constitutional rights to equal protection and due process. He presents three arguments in support of this view. In two of these arguments appellant compares the rights of a juvenile under the determinate sentencing statutes with those of a juvenile under the preexisting adjudication and disposition sentencing statutes,[5] as well as the rights of a juvenile when certified as an adult and processed through the normal adult criminal justice system. This comparison is discussed below.

Subsequent to the filing of appellant's brief in the instant case, the Third Court of Appeals delivered an opinion on points remarkably similar to those presented here. *In the Matter of R.L.H.,* 771 S.W.2d 697 (Tex.App.—Austin 1989, writ denied). In

that case a jury determined that the juvenile engaged in delinquent conduct, i.e., attempted capital murder, and assessed disposition at confinement for 20 years. In his appeal, R.L.H. claimed, inter alia, that: (1) the determinate sentencing statutes were violative of the state and federal constitutional prohibition of incarceration in the penitentiary unless on an indictment of a grand jury, (2) the determinate sentencing statutes were violative of his state and federal constitutional rights to due process and equal protection, and (3) the disposition imposed was void, since it was not based upon any pleadings. The Austin Court held against appellant and affirmed the disposition. We consider the reasoning in *R.L.H.* to be directly supportive of our discussion in the instant case.

■ When the constitutionality of a statute has been challenged, alleging that a fundamental right is violated, the courts must review that statute under a standard of strict scrutiny. *R.L.H.,* 771 S.W.2d at 701. Such a statute shall be upheld if it furthers a compelling state interest. *Id.* In enacting the determinate sentencing statutes, the legislature has furthered a compelling state interest by striking a balance between the state's interest in providing for the care, protection and development of its children, TEX.FAM.CODE ANN. § 51.01 (Vernon 1986), and its interest in providing protection and security for its general citizenry. Since both of these goals are vital, and the determinate sentencing statutes strike a balance between them, the statutes further a compelling state interest. Accordingly, the statutes in question are not violative of the Constitution's equal protection provisions. *R.L.H.,* 771 S.W.2d at 701.

■ Due process rights are violated when an individual is treated in a selective or arbitrary manner by the State. 12 Tex. Jur.3d Constitutional Law § 147 (1981). At

---

proceedings. TEX.FAM.CODE ANN. § 51.17 (Vernon 1986).

**4.** The provisions authorizing a determinate sentence are found in more than one statutory section. They include TEX.FAM.CODE ANN. §§ 53.-

045, 54.04 and 54.11 (Vernon Supp.1991) and TEX.HUM.RES.CODE ANN. §§ 61.079 and 61.084 (Vernon 1990).

**5.** TEX.FAM.CODE ANN. §§ 54.03 and 54.04 (Vernon Supp.1991).

trial, the appellant specifically stated that he was *not* alleging any improper action by the prosecutor. He argued that there existed the *potential* for impropriety. Furthermore, in casting his due process arguments in the traditional equal protection terms (by comparing the treatment of various groups), appellant's due process claims are not only irrelevant to this appeal, but are also waived. *In the Matter of J.T.H.,* 779 S.W.2d 954, 956–57 (Tex.App.—Austin 1989, no writ); *R.L.H.,* 771 S.W.2d at 700.

■ In regard to his equal protection claims, appellant first argues that as the statutes are presently written, the prosecutor has "considerable and broad discretion" in determining whether to adjudicate a juvenile pursuant to the pre-existing determinate sentencing statutes [6] or to proceed pursuant to the newer determinate sentencing statutes.[7] TEX.FAM.CODE ANN. § 54.04 (Vernon Supp.1991). Appellant argues that due to the time variance between the two alternatives it would be necessary to institute guidelines in order to eliminate the "selective and potentially prejudicial application of the Statutes" by the prosecutor. As support, appellant cites *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *McKinney v. State,* 761 S.W.2d 549 (Tex.App.—Corpus Christi 1988, no writ). Both of these cases concern the issue of the misapplication of prosecutorial discretion in the exclusion of minority venirepersons based on no racially neutral rationale. Appellant maintains that "just as the Court held in the *Batson* case that a prosecutor given the opportunity for discrimination might do so, in the instant case, a prosecutor with the discretion or opportunity to discriminate in the application of determinate sentencing statutes as opposed to one year adjudication and disposition statutes, would be in a position to potentially exercise improper discretion." However, it is important to note that neither *Batson*

nor *McKinney* held that merely because the *potential* existed for a prosecutor to improperly exercise his discretion to exclude minority venirepersons through use of peremptory challenges, that such would render the practice of peremptory challenges unconstitutional. The United States Supreme Court recognized that the discretionary practice involved in peremptory challenges occupies "an important position in our trial procedures," *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724, and is considered "a necessary part of trial by jury," *Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965), insofar as enabling each side to exclude those jurors it believed would be most partial toward the other side, thereby ensuring trial by an impartial jury. *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 809, 107 L.Ed.2d 905 (1990). In the case at bar, appellant specifically assured the court during trial arguments that he was *not* alleging that the District Attorney's Office had done anything improper, but rather that the "opportunity" exists for a prosecutor to deny constitutional rights to a juvenile under the determinate sentencing statute. Accordingly, he felt that the statute is unconstitutional.

For there to be reversible error, there must first have been error, which harmed the defendant and to which defendant objected. In his trial arguments, appellant specifically stated that he was *not* alleging any impropriety by the prosecutor. Appellant merely argued the *potential* of impropriety. Thus, his argument presents no error for review. To render an opinion on the *potential* of impropriety would be tantamount to rendering an advisory opinion. This Court has no such authority. *See City of Garland v. Louton,* 691 S.W.2d 603, 605 (Tex.1985); *R.L.H.,* 771 S.W.2d at 700.

6. In which case the maximum disposition a juvenile could receive would be one (1) year, subject to extensions not to exceed one (1) year each.

7. If found to have engaged in delinquent conduct that included a violation of any of the six

enumerated Texas Penal Code provisions under TEX.FAM.CODE ANN. § 53.045(a) (Vernon Supp. 1991), and if the State's petition was approved by a grand jury pursuant to subsection (B) of § 53.045, a juvenile could receive a maximum disposition of thirty (30) years.

■ Appellant also argues that "the realities of the Texas criminal system is such that an adult given a thirty year conviction could potentially be released prior to the time that Appellant might be released through the juvenile system" and further, that "another juvenile transferred to the criminal courts for prosecution as an adult might be entitled to earlier release as an adult than Appellant might receive as a juvenile." He maintains that such a potential for inconsistency denies him equal protection under the law.

■ The award or denial of "good time" credit is within the discretion of the director of the Texas Department of Criminal Justice Institutional Division (hereinafter "TDCJID"). *Ex parte Williams*, 589 S.W.2d 711, 712 (Tex.Cr.App.1979). The trial court has authority only to pronounce the sentence that is to be executed. It does not have the authority to interfere with the manner of its lawful execution. *Kopeski v. Martin*, 629 S.W.2d 743, 745 (Tex.Cr.App.1982). The trial court properly exercised its authority in pronouncing disposition upon the verdict of the jury. Even had it desired to do so, the trial court could not have issued any instructions to the director of the TDCJID which would have the effect of "interfering" with the disposition's lawful execution.

Furthermore, the issue as to whether appellant might serve any time whatsoever in the state penal institution is not yet ripe. Before appellant may be transferred to the TDCJID, the juvenile court which originally committed the juvenile to the Texas Youth Commission must hold a hearing to determine whether he is to be transferred to the TDCJID or be paroled. An explanation of the transfer process as described in *R.L.H.* demonstrates why this argument is not yet ripe for our discussion.

> Six months before his birthday, the Youth Commission sends notice to the committing court that the juvenile will be eighteen.... The court must act on such notice by holding a hearing before one month from the birthday.... At the conclusion of the hearing, the court may order the juvenile transferred to the [TDCJID] or may order him paroled from the Youth Commission.... Accordingly, a transfer to the Texas Department of Corrections will occur, if at all, only after a hearing and a court order. Any person transferred has the right to appeal such an order.

*R.L.H.*, 771 S.W.2d at 700; Tex.Hum.Res. Code Ann. § 61.079 (Vernon 1990); Tex. Fam.Code Ann. §§ 54.11(h), (i) and 56.-01(c)(2) (Vernon Supp.1991). Since the issue as to whether appellant will be transferred to the TDCJID is dependant upon the subsequent transfer hearing, and in appellant's case no such hearing has yet been held, appellant may serve no time whatsoever in the TDCJID. Therefore, an opinion on these arguments would be wholly advisory. As previously indicated, we have no authority to render such an opinion. *City of Garland*, 691 S.W.2d at 605; *R.L.H.*, 771 S.W.2d at 700.

Should the committing court subsequently order the transfer of appellant to the TDCJID, then a real controversy would exist. Appellant may then appeal from that order. Tex.Fam.Code Ann. § 56.01(c)(2) (Vernon Supp.1991). Until such time, appellant's arguments are premature. Moreover, appellant does not argue that he has been unlawfully denied an early release, but rather that a *potential* exists where he *might* be denied a release as early as granted another. Again, appellant does not argue impropriety, only the *potential* for impropriety. No error has been shown to have occurred, and thus, nothing is presented for review.

■ In his final argument under this point, appellant contends that by failing to require the State to advise a grand jury of the various options and alternatives available to a prosecutor concerning how a juvenile may be adjudicated, his due process and equal protection rights were violated.

■ It is undisputed that the prosecutor had alternatives other than the determinate sentencing statutes under which the appellant could have been adjudicated. However, so long as the prosecutor has probable cause to believe that an accused committed a violation of an offense defined

by statute, the decision whether to prosecute, what charges to file or bring before a grand jury, or even what form the prosecution is to take, rests entirely within the prosecutor's discretion. *Bordenkircher v. Hazes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *cf. Jones v. State*, 568 S.W.2d 847, 853 (Tex.Cr.App.1978), *cert. denied*, 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352 (1978) (the matter of pleading an offense by complaint, information or indictment is for the county or district attorney). Furthermore, TEX.FAM.CODE ANN. § 53.045(b) (Vernon Supp.1991) authorizes a grand jury merely to determine whether they approve a petition submitted to them under this section. It does not require an investigation of various prosecutorial alternatives.

We find appellant's constitutional challenges to the determinate sentencing statutes to be without merit. Accordingly, his second point of error is overruled.

■ In his third point of error, appellant contends that the juvenile court lacked jurisdiction to consider the determinate sentencing statutes during disposition because they were not specifically set forth in the State's petition. Appellant argues that TEX.R.CIV.P. 47 requires the State to provide in its petition fair notice of the claims, allegations, and *relief* sought. He contends that since he was not afforded notice of the State's intent to pursue adjudication and disposition pursuant to the determinate sentencing statutes, "fair notice" was not provided, and thus, the disposition should be set aside. Citing *Board of Firemens' Relief & Retirement Fund v. Stevens*, 372 S.W.2d 572 (Tex.Civ.App.—Houston 1963, no writ), appellant asserts that a court "may not grant relief not supported by pleadings or prayer." *Id.* However, a reading of the petition shows that the State sought, among other remedies, "such disposition of the care, control and custody," of the juvenile as the trial court deemed "just and proper." The fact that the State did not elect between the pre-existing sentencing statutes and the new determinate sentencing statutes is irrelevant. Appellant was put on fair notice that he was

being charged with delinquent conduct, i.e., aggravated sexual assault, and that his liberty was at stake.

In any event, as a juvenile court case, this cause is controlled by the Texas Family Code. Accordingly, the general sufficiency of the petition is governed by TEX. FAM.CODE ANN. § 53.04 (Vernon 1986). As previously discussed under appellant's first point of error, the State's petition complied fully with every element described therein. Appellant's third point of error is overruled.

■ In his fourth point of error, appellant challenges the certification to the juvenile court of the grand jury's approval of the State's petition. Appellant concedes that a Certificate of Approval was signed by the foreman of the grand jury, along with nine (9) other grand jury members, and that the original of this certificate was filed in the juvenile court. However, he contends that there was no certification of this approval to the juvenile court by the district clerk as required by the Texas Family Code. In pertinent part, TEX.FAM. CODE ANN. § 53.045(d) (Vernon Supp.1991) states: "If the grand jury approves of the petition, the fact of approval shall be certified to the juvenile court, and the certification shall be entered in the record of the case."

A review of the Certificate of Approval on file in this cause shows no written certification to the juvenile court. However, the State argues that the certificate was properly certified through testimony elicited from a witness during the disposition hearing. They contend that Ms. Gail Turner testified that she was the clerk of the court in which the grand jury was sitting on the day the certificate was returned, and that among her duties as court clerk was the responsibility of handling the documents returned by the Smith County Grand Jury. She testified that the document in the court's file marked "Certificate of Approval" is the same document returned by the grand jury. She testified that the document was from cause number J–88–98, styled "In the Matter of [S.B.C.]." She further testified that the document

was signed by the foreman of the grand jury, and upon receiving the document she file marked it and kept it until the following day whereupon she transferred it to the clerk of the juvenile court. A reading of the certificate clearly shows that the grand jury approved the State's petition.

Section 53.045(d) of the Texas Family Code does not require the clerk to certify the grand jury's action. Therefore, Ms. Turner's testimony stating that the Certificate of Approval filed in the juvenile court is the same certificate returned by the grand jury, signed by the foreman, and specifically identifying the style and cause number, satisfies the statutory certification requirement. We note, also, that the appellant concedes that the certificate on file is the original certificate returned by the grand jury. We find no error.

■ Appellant also argues that the certification of the approval should be had prior to the commencement of the adjudication. We find no such time restrictions in a reading of the statute. We conclude that the Certificate of Approval was properly and timely filed with the juvenile court.

■ Furthermore, we find that no reversible error has occurred in the instant case. As previously stated, this is a juvenile matter and as such, is civil in nature. TEX.R.APP.P. 81(b)(1) provides that no judgment in a civil action shall be reversed on the ground that the trial court has committed an error of law, unless it is determined that the error amounted to such a denial of the appellant's rights as was "reasonably calculated to cause and probably did cause rendition of an improper judgment," or was such as to probably prevent the appellant from making a proper appeal. The facts of this cause does not show this to be the case. Appellant was fully aware of the Certificate of Approval, and even concedes that the certificate filed with the juvenile court is the original certificate. Therefore, appellant was not denied any rights which would reasonably be calculated to cause or probably did cause rendition of an improper

judgment. TEX.R.APP.P. 81(b)(1). Appellant's fourth point of error is overruled.

■ By his fifth point of error, appellant contends that an "inherent conflict" exists within the grand jury's Certificate of Approval insofar as a member of the grand jury was also the spouse of a judge who presided over two of appellant's detention hearings.[8]

Smith County Judge Larry Craig presided over two of the five detention hearings conducted pursuant to TEX.FAM.CODE ANN. § 54.01 (Vernon 1986) in cause number J–85–126. This cause of action was subsequently dismissed without prejudice. The Certificate of Approval now made the subject of complaint was issued in regard to the State's petition in cause number J–88–98. There is no showing that Judge Craig ever presided over any hearing in connection with appellant's juvenile court cause number J–88–98, the case here appealed. Thus, we find no "inherent conflict" within the grand jury's approval of the State's petition in cause number J–88–98.

■ Even were we to agree that a conflict might have arisen due to the marital relationship, we find that the certificate, in bearing a total of ten (10) signatures, would still be valid in that, even by eliminating the signature of Mrs. Craig, there still exists a sufficient number of signatures to authorize the approval. *See* TEX. CODE CRIM.PROC.ANN. art. 19.40 (Vernon 1977).

■ Appellant argues that the "taint," if any, created by the marital relationship should be extended to disqualify the entire grand jury. There is no evidence of "taint" upon the grand jury in this matter because of the Craigs' marital relationship. Appellant admits that there is no evidence of taint, asserting only that there was "potential for abuse." There was no proof that Mrs. Craig had any knowledge of the appellant's earlier detention hearings or that they took place. There is no evidence upon

---

**8.** It was stipulated at trial that Barbara Craig was the spouse of Smith County Judge Larry Craig.

which to demonstrate any harm to appellant arising out of the Craigs' relationship. Appellant's fifth point of error is overruled.

In his sixth point of error, appellant asserts a plea of double jeopardy. He contends that he was twice placed in jeopardy for the same offense (aggravated sexual assault). On June 20, 1988, the State filed petition number J–85–126 alleging that appellant had engaged in delinquent conduct, i.e., aggravated sexual assault. Pursuant to Tex.Fam.Code Ann. § 54.01 (Vernon 1986), detention hearings were conducted wherein evidence and testimony were presented and arguments of counsel were heard in an effort to determine whether S.B.C. should remain in detention. Having found sufficient cause to order the continued detention of S.B.C., the juvenile court issued the appropriate orders of detention. Subsequently, the court ordered appellant's release from detention under a "home arrest" provision. In his motion to dismiss, appellant acknowledges that the juvenile court did *not* make an adjudication of the merits of the cause.

On August 17, 1988, the State filed a motion to dismiss its petition, stating its intent to refile, pursuant to Section 53.045 of the Texas Family Code. The motion was granted and the juvenile court ordered the previous petition dismissed *without prejudice.*

Appellant argues that jeopardy attached at the initial detention hearing for State's petition number J–85–126 when testimony was first heard to establish probable cause. He further argues that the State's subsequent petition, cause number J–88–98, filed in accordance with the determinate sentencing statutes, is identical in substance to the petition previously filed and dismissed. There being no substantive change between the two petitions, appellant maintains that the dismissal of the first petition should operate the same as an "acquittal" of these charges, or alternatively, as res judicata. He argues that the State then would be estopped from raising the same issues in a subsequent cause of action.

As previously discussed, this action is civil in nature, not criminal; since it is a juvenile matter, the Texas Family Code is controlling. Tex.Fam.Code Ann. § 51.04 (Vernon 1986). Given the operative effect of the Texas Rules of Civil Procedure under Tex.Fam.Code Ann. § 51.17 (Vernon 1986), the State was authorized to timely move for a nonsuit under Tex.R.Civ.P. 162. *In the Matter of J.A.L.,* 608 S.W.2d 819, 821 (Tex.Civ.App.—Amarillo 1980, no writ).

A judgment of dismissal is not an adjudication of the merits of the dismissed action; it merely places the parties in the position they were in before the court's jurisdiction was invoked, just as if the suit had never been brought. *Crofts v. Court of Civil Appeals,* 362 S.W.2d 101, 104 (Tex. 1962); *J.A.L.,* 608 S.W.2d at 821. Thus, the State's motion to dismiss the previous petition did not operate as an adjudication of the merits of that cause, nor was it a request for a dismissal with prejudice so as to bar a subsequent reassertion of the same issues. *J.A.L.,* 608 S.W.2d at 821. In fact, the order of the juvenile court explicitly stated that the dismissal of cause number J–85–126 was "without prejudice." By so granting the State's motion, the court's dismissal order forms no basis for the res judicata claim. *Id.* Appellant's sixth point of error is overruled.

In his seventh point of error, appellant contends that remarks propounded by the State during voir dire so prejudiced the venire panel as to necessitate a reversal. We disagree.

During voir dire, the prosecutor made numerous references to the juvenile as "the Defendant" and described the proceedings as "a trial" where "the Defendant" would be found "guilty" (as opposed to "an adjudication" of "a juvenile"). A review of the record shows that appellant only once presented an objection to this language.[9] Therefore, it is to this objection that this Court directs its attention.

---

9. On a previous instance during this trial, trial counsel brought the use of these phrases to the court's attention by requesting the judge to "remind" the State of the appropriate terminology; however, no objection to the use of the phrases was presented at that time.

During the voir dire, appellant interrupted the State's questioning of the venire panel and requested that counsel approach the bench. Out of the hearing of the venire panel, appellant presented his objection. The trial court judge instructed the prosecuting attorney in the appropriate terminology to be used and cautioned him as to the consequences of his failure to do so. However, the trial judge made no specific ruling on appellant's objection. When the prosecutor resumed his questioning of the venire panel, he explained that the language he had been using in discussing the proceedings of a juvenile matter was incorrect. He further explained the differences in the terminology and apologized for the misstatements.

"In order to preserve a complaint for appellate review, the complaining party must make known to the trial judge his objection and his grounds thereof, *and obtain a ruling upon the objection.*" *Guzman v. Solis,* 748 S.W.2d 108, 111 (Tex. App.—San Antonio 1988, writ denied) (emphasis ours). Since the record shows that appellant failed to obtain a ruling on his objection, or to move the court to instruct the jury to disregard, the point is not preserved for review. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 637 (Tex.1986); *Huckaby v. Henderson,* 635 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). Appellant's seventh point of error is overruled.[10]

■ In his eighth and final point of error, appellant contends that the trial court erred in failing to reflect within its Order of Disposition the amount of time he spent in custody during the pendency of the case. He argues that the failure to include such information will prevent the TDCJID and the Board of Pardons and Paroles from being able to determine his parole eligibility date following his transfer to TDCJID, *should such transfer ever occur.*

As previously discussed, the issue of whether appellant might serve any time whatsoever in the TDCJID, much less obtain parole therefrom, is not yet ripe. A hearing must first be held prior to his eighteenth birthday to determine whether he is to be so transferred or paroled from the Texas Youth Commission. Since the determination of his parole eligibility date from TDCJID is dependent upon his transfer to TDCJID, and since his transfer to TDCJID is dependent upon a transfer hearing yet to be held, an opinion on this point would be advisory. This Court has no authority to render such an opinion. *City of Garland,* 691 S.W.2d at 605; *R.L.H.,* 771 S.W.2d at 700. Should the committing court subsequently order appellant's transfer to the TDCJID, *then* a real controversy shall exist. Appellant may then make his appeal from that order. TEX.FAM.CODE ANN. § 56.01(c)(2) (Vernon Supp.1991). Until such time, appellant's argument is premature. Appellant's final point of error is overruled.

The judgment of the trial court is affirmed.

---

10. Even were this Court to consider the actions of the trial judge as sufficient to constitute a ruling upon the objection, such actions would be viewed as *sustaining* appellant's objection. Before it preserves error for review, an objection must be overruled. *Perez v. Baker Packers,* 694 S.W.2d 138, 141 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Appellant failed to pursue his objection to the point of obtaining an adverse ruling by the court and thereby presents nothing for review.