NO. 07-02-0361-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 16, 2003

_____

RUBEN A. CORTEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-438943; HONORABLE BRADLEY S. UNDERWOOD, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Following appellant Ruben Cortez's plea of not guilty, a jury convicted him of aggravated sexual assault and assessed punishment at five years confinement. In six issues, appellant claims the evidence is legally and factually insufficient, and he was denied effective assistance of counsel. Based upon the rationale expressed herein, we affirm.

Appellant and the victim lived together for approximately two and a half years prior to the offense giving rise to this appeal. Together, they have a young son. Around 4:00 a.m. on December 8, 2001, the victim's mother, Minnie Hernandez, awoke to the sound of someone banging on the front door of her house and ringing the doorbell repeatedly. When she answered the door, Ms. Hernandez discovered the victim, who acted "like she was scared, like somebody was running from behind her." The victim was crying and upset and told Ms. Hernandez, "he [appellant] hurt me." Ms. Hernandez immediately transported the victim to the hospital where she was initially treated for injuries related to the physical assault. During the course of her treatment, however, the victim acknowledged, "He [appellant] made me have sex with him."

After hearing the victim's allegation, Carolyn Chisholm, the attending nurse, notified law enforcement and the local rape crisis center shortly before 6:00 a.m. While waiting for representatives from each of those agencies to arrive, Ms. Chisholm conducted a brief interview of the victim. During the interview, the victim was "tearful," "nervous," "anxious," and "scared" and was shaking and crying as she spoke. The victim reported that the trouble began around 3:00 that morning when she arrived at appellant's and her home. Appellant was upset because one of the victim's male friends had telephoned her earlier in the evening. At some point during their argument over the phone call, appellant grabbed the victim's head and began banging it on the carpet. He then kicked her, and told her "he was going to kill her, . . . didn't care if she died, that her mom could take care

2

of their baby." After the beating, appellant penetrated the victim's vagina and rectum with his penis. When asked by Ms. Chisholm whether the sexual intercourse was against her will, the victim replied, "yes." The victim explained she was too "scared to say anything" and "didn't tell him to stop because she was afraid he would hit her again."

Jana Prindle was the rape crisis counselor on call on the day of the offense. When Ms. Prindle arrived at the hospital some time after 6:00 a.m., the victim was "hysterically crying," "very traumatized," "shaking," and "nervous." Ms. Prindle and the responding police officer interviewed her. They learned that, at some point earlier in the morning, appellant grabbed the victim's hair and smashed her head into a bed. During the assault, appellant threatened to kill her and to take her baby away. The victim confirmed that appellant penetrated her rectum, and she was "very insistent" the sexual encounter was not consensual. Finally, the victim volunteered that she had never engaged in anal sex before and did not want to participate in it on the night of the offense.

Three days after the assault, Chris Bruenig, the detective assigned to investigate the offense, phoned the victim and requested she provide a "full sworn statement" to be included in the case file for the District Attorney's office. At that time, the victim claimed her sexual encounter with appellant three days before was consensual. She did not, however, deny being physically assaulted by appellant. When Bruenig contacted appellant during the course of the investigation, he denied committing any assault against the victim, physical or otherwise. Notwithstanding the victim's recantation, Bruenig

3

presented the case to the District Attorney's office, and the grand jury returned a true bill of indictment against appellant for aggravated sexual assault.

Appellant testified at trial and admitted physically assaulting the victim. He explained, "I didn't know what I was doing, and I just lost control of myself." He claimed, however, that once he "got out of that rage mode," and he and the victim began talking, he had no intention of ever touching her again. Appellant acknowledged he intentionally and knowingly caused the penetration of the victim's anus and used force and violence against her. He maintained, however, that the sexual encounter with her was consensual.

During the State's case in chief at trial, the victim testified that her sexual relations with appellant on December 8, 2001 were consensual. The victim explained she initially performed oral sex on appellant, and then voluntarily engaged in vaginal and anal intercourse with him. She also claimed to have engaged in anal sex with appellant before the day of the offense. However, the victim acknowledged she suffered the injuries to her mouth and tongue before performing oral sex on appellant. The victim conceded she did not want to testify and was worried about her son not being able to see appellant if he was convicted. The victim also testified during appellant's case in chief. When questioned about the discrepancies between her trial testimony and the statements she made to Hernandez, Chisholm, and Prindle on the morning of the offense, the victim claimed she did not remember what she had said to any of them. On cross-examination by the State,

4

however, the victim admitted she remembered telling appellant during the assault that she thought he was going to kill her. She also admitted she thought she was going to die.

By his first two issues, appellant contends the evidence is legally and factually insufficient to show (1) the victim was compelled to consent to sex with him; and (2) he intentionally and knowingly compelled the victim to submit to sex by the use of physical force or violence.[1] Specifically, appellant maintains the evidence is insufficient because both he and the victim, the only two eyewitnesses to the alleged offense, testified their sexual encounter was consensual. We disagree.

The standards of review for legal and factual sufficiency of the evidence are well established and need not be detailed. *See* Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App. 2000); Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996). Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. Appellant was indicted for committing aggravated sexual assault in violation of section 22.021 of the Texas Penal Code (Vernon 2003). Based upon the indictment, the trial court instructed the jury:

> . . . if you find from the evidence beyond a reasonable doubt that on or about December 8, 2001, in Lubbock County, Texas, [appellant] did then and there intentionally or knowingly cause the penetration of the anus of [the victim] by

---

[1]Because appellant addresses the issues contemporaneously, we will do the same.

5

[appellant's] penis, without the consent of [the victim], and [appellant] did then and there compel [the victim] to submit or participate by the use of physical force or violence, and [appellant] did then and there, by acts or words, place [the victim] in fear that death or serious bodily injury would be imminently inflicted on [the victim], then you will find [appellant] guilty of the offense of aggravated sexual assault and so say by your verdict.

At the outset, we note that Hernandez's, Chisholm's, and Prindle's testimony regarding what the victim told them on the morning of the offense was admissible under the excited utterance exception to the rule against hearsay. Tex. R. Evid. 803(2); *see* Scugoza v. State, 949 S.W.2d 360, 362 (Tex.App.–San Antonio 1997, no pet.). The witnesses variously described the victim as "crying," "shaking," "upset," "tearful," "nervous," "anxious," "scared," "emotional," and "hysterical" as she related to them the physical and sexual assaults she suffered on December 8, 2001. Furthermore, the victim herself testified she was "upset," "crying," and "hurting" at the time she arrived at her mother's house after the assault. Ms. Prindle and Ms. Chisholm explained that the victim's emotional demeanor persisted throughout her sojourn at the hospital. Clearly, the victim was still dominated by the emotions, excitement, fear, pain, and condition of the assault at the time she made the statements to Hernandez, Chisholm, and Prindle. S*ee* Salazar v. State, 38 S.W.3d 141, 154 (Tex.Cr.App. 2001) (citing McFarland v. State, 845 S.W.2d 824, 846 (Tex.Cr.App.)).

Next, we observe that Hernandez's, Chisholm's, and Prindle's testimony constitutes direct evidence of the crime appellant committed. *Cf.* Fernandez v. State, 805 S.W.2d

6

451, 454 n.2 (Tex.Cr.App. 1991) (testimony by officer reflecting statements made by defendant's wife prior to trial, which were recanted by wife at trial, was direct evidence because it was "an inference from the assertion of a witness to the truth of the fact asserted"). That direct testimony, if accepted by the jury, as it obviously was, is legally sufficient to sustain the verdict. *Cf. Scugoza*, 949 S.W.2d at 363. Indeed, as factfinder, the jury was entitled to judge the credibility of the witnesses and choose to believe all, some or none of the testimony. Chambers v. State, 805 S.W.2d 459, 461 (Tex.Cr.App. 1991). The jury observed the victim's demeanor and heard Hernandez, Chisholm, and Prindle testify about statements the victim made to them on the day of the offense. The jury was entitled not only to reconcile any conflicts in the testimony, but even to disbelieve the victim's recantation. Peters v. State, 997 S.W.2d 377, 383 (Tex.App.–Beaumont 1999, no pet.). Furthermore, the victim's prior statements to Hernandez, Chisholm, and Prindle have an "inherent indicia of trustworthiness" because they were "made closer in time to the event in question." *Id*. We conclude a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The evidence is legally sufficient to sustain the conviction.

Evidence to support a criminal conviction may be factually insufficient in two distinct ways. In the first, the evidence in support of the existence of a vital fact, considered as standing alone, is factually too weak to support it. Goodman v. State, 66 S.W.3d 283, 285 (Tex.Cr.App. 2001). The second type of factual insufficiency involves a balancing scale,

7

where there is evidence on both sides of the question. *Id.* Here, three separate witnesses testified about the victim's statements on the day of the offense that she did not consent to sexual intercourse with appellant. Those statements strongly support the existence of a vital fact at issue in the trial and on appeal--lack of consent. Furthermore, balancing the evidence related to lack of consent in this case, we cannot say appellant's evidence was so strong, so overwhelming, so much more extensive than the State's evidence that it renders the jury's verdict so contrary to the great weight and preponderance of the evidence that it is manifestly unjust. *See id.* In short, the evidence is factually sufficient to support the verdict. Appellant's first and second issues are overruled.[2]

With the remaining issues, appellant claims his trial attorney was ineffective by failing to object to Hernandez's, Chisholm's, and Prindle's hearsay statements about the victim's allegations to them on the day of the offense. Appellant also contends his trial attorney was ineffective in light of the alleged cumulative errors made at trial. We disagree.

In determining whether counsel's representation was so inadequate as to violate a defendant's Sixth Amendment right to counsel, Texas courts adhere to the two-pronged test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See* Hernandez v. State, 726 S.W.2d 53, 56-7 (Tex.Cr.App. 1986). There is a

---

[2]We conclude the evidence that establishes the victim's lack of consent is also sufficient to demonstrate that appellant "compelled" her to consent.

strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690. The burden is on appellant to prove by a preponderance of the evidence that counsel was ineffective. *See* McFarland v. State, 928 S.W.2d 482, 500 (Tex.Cr.App. 1996). Appellant must first prove that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness. *Id*. If appellant demonstrates deficient assistance of counsel, he must then affirmatively prove prejudice as a result of the deficient assistance. *Id*. In proving prejudice, appellant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Hernandez*, 726 S.W.2d at 55.

Any allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *McFarland*, 928 S.W.2d at 500. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id*. Defense counsel should ordinarily be accorded an opportunity to explain his or her actions before being labeled as unprofessional, incompetent or ineffective. *See* Bone v. State, 77 S.W.3d 828, 836 (Tex.Cr.App. 2002).

As noted above, the hearsay testimony of Hernandez, Chisholm, and Prindle was admissible pursuant to the excited utterance exception to the hearsay rule. Tex. R. Evid.

9

803(2).  As a result, appellant has failed to demonstrate that his trial counsel's assistance fell below an objective standard of reasonableness; thus, his ineffectiveness claim is defeated.  McFarland, 928 S.W.2d at 500.  Furthermore, the failure to object to admissible evidence is not ineffective assistance.  Burruss v. State, 20 S.W.3d 179, 187 (Tex.App.–Texarkana 2000, pet. ref'd).  Appellant's issues three, four, five, and six are overruled.

Accordingly, the judgment of the trial court is affirmed.


Don H. Reavis
Justice


Do not publish.